Houston, Special J.,
delivered the opinion of the court.
Tin's is an action of ejectment for two pieces of land in Davidson county, near the city of Nashville. The lessors of the plaintiff claim the land as the heirs at law of Albert II. "Wynne, deceased, being his nephews, and neices; and the defendant, his widow, claims the land as devisee under his will. The will bears date the 3d of October, 1830, and the testator died in June, 1849. *406 After Ms death., the will was found among liis valuable papers, all in his own handwriting, signed by him, but unattested by witnesses. He had been married to Ids wife many years and had no children. At the date of the will, he had a large personal estate and but little real estate. lie purchased the property in controversy after the year 1830, together with a large property real in Mississippi. The property sued for, is the late residence of the testator and a lot adjoining it or near to it, and is worth eight or ten thousand dollars. The will is in few words and after providing for the payment of his debts by the first clause, he declares, “Item 2d. J give to my much beloved wife, Micha Wynne, all the balance of my property, both real and personal, to have and to hold to her own benefit, to the exclusion of all others.” He then appoints his wife sole executrix, unless she should wish some other person to join her, expressing a wish that no security be required of her, unless some other person should join her.
Several questions have been raised in the argument and elaborately discussed, but from the view we have taken of the case, we deem it unnecessary to notice all the questions raised. The first section of the act of 1842, ch. 169, prescribes the mode of descent, where any person shall die intestate, and having no issue or brothers or sisters, or issue of brothers or sisters. The second section provides that when an estate is vested by descent, it shall not be divested by the birth of a child; unless such child shall be bom within ten calendar months next after the death of the intestate.
The third section provides, that when any person to whom any estate shall be devised, shall die before the. death of the testator, leaving issue living at the testa *407 tor’s death, such devise shall not lapse, but shall vest in the issue of the deceased devisee.
The fourth section of the act is in these words, “ That any estate, right or interest in lands acquired by a testator, after making of his will, and of which he died seized or possessed as aforesaid, shall pass thereby in like manner as if owned by him at the making of the will, if such clearly appear by the will to have been the testator’s intention.”
The first question raised is, doth this fourth section apply to wills made before its passage, when the testator lived until after its passage? In other words, does it apply to the will of Albert II. Wynne? It is well known, that before the passage of this act, land acquired after the making of a will, did not pass thereby in this State, however clear the intention of the testator might be, that it should so pass. The reason of this rule was, that a devise is in the nature of a conveyance or an appointment of a particular estate; and therefore lands purchased after the execution of the will, did not pass by it; 4 Kent, 510.
Tin's was a stern and inflexible rule, in many cases operating hardly, by wholly defeating the clear and unequivocally expressed wish of the testator; and the object of the statute -was to abolish this harsh rule and to permit testators to pass all their real estate by will, as well future acquisitions, as lands then owned, if such appeared to be the intention, placing the devise of real estate on a footing, as nigh as might be, with a will of personalty; to pass according to the apparent intent of the testator.
There is nothing in the language of the act, restricting its operation to wills made after its passage. On *408 the contrary, tire terms of the act are general, and broad enough, it seems to its, to apply to all estates in lands, acquired as well after, as before the execution of the will. “Any estate, right, or interest in lands acquired by a testator, after making of his will, and of which he died, siezed, or possessed, as aforesaid, shall pass thereby,” &c. This is comprehensive without a restriction, or seeming restriction, as to the date of the will. And the fifth section of the act, would seem to strengthen this view of the question. It provides, “that nothing herein contained shall be so construed as to operate upon, or affect in any manner, or apply to the estate of any person or persons whatsoever, who have died previous to the passage of this act.” By excluding, in such express terms, from the operation of the act, the estate of persons who have died before its passage, the section very strongly indicates the intention of the legislature, to include, in the fourth section, the estates of all persons ■who are living at the date of the passage of the act; and we are of opinion, that such was the intention of the legislature, and that the fourth section does apply to Albert H. "Wynne’s will, and to the property in.controversy. And we are the better satisfied with this view of the question, by the fact, that this act has received the same construction by the courts of Massachusetts. The fourth section of our act is identical with the act of Massachusetts upon the same subject, excepting the -word, “manifestly,” which appears in the Massachusetts act and not in ours. That act has been construed by the supreme judicial court of Massachusetts, to apply to wills made before its passage, as well as to wills made afterwards; Cushing et als. vs. Aylwin, 12 Met., 169; Pray vs. Waterston, 12 Met., 262.
*409 It is true, that the act of North Carolina, upon this subject, has received a different construction by the supreme court of that State. But it does not appear, that the act of North Carolina contains any such provision as that contained in the fifth section of our act. A.nd moreover, the terms of the North Carolina act, as the court there says, clearly make it operate prospectively, only. They are, “that it shall be lawful for any testator,” &c.; and “that the power hereby given shall extend” &c.; Battle vs. Speight, 9 Ire., 288.
2. But it is further insisted, that if the act of 1842, ch. 169, § 4, in terms, applies to wills made before its passage, and the legislature intended that it should so operate, it is inoperative and void, because in direct conflict with our Declaration of Rights, article 1, § 20; which declares, “ that no retrospective law, or law impairing the obligation of contracts, shall be made.” If this is true, then, of course, there is an end of the question, so far as the act of 1842 is concerned. It is true, that taking the provision in its literal terms, the act of 1842, and all other legislation having in view past transactions of whatever nature or character, would be in conflict ivith it. But taking it in its limited and restricted signification, as defined by our courts of justice, and there, are many cases of retrospective legislation that are not prohibited. But is the act of 1842 one of the cases not prohibited by it? This section of the Bill of Rights has been so often directly and indirectly before the courts, and has received such a uniform legal construction, that AA'e do not feel authorized, were we so inclined, to depart from it.
We understand that construction to be, that retrospective laws may be made where they do not impair the *410 obligation, of contracts, or divest or impair vested rights. And bence, the legislature may make laws for the extenuation or mitigation of offences, for repealing former laws; for the enforcement of contracts already made; or to make a paper authenticated according to its directions, evidence, though not evidence before; laws affecting the authentication and solemnities of contracts; laws giving further time for the registration of deeds; laws validating deeds, and the defective probate of deeds; laws jjroviding for the payment of the officers and agents of the State for services already performed; laws providing new and additional remedies for a just right already in being; laws modifying or changing remedies, and all other strictly remedial laws; and there are many other laws that are retrospective, according to the letter, yet not prohibited by the Bill of Bights; 1 Meigs’ Dig., 305-6.
In the case of Townsend vs. Townsend, Peck. R., 121, speaking of the 20th section of the bill of rights, the court says “that the whole clause and both sentences taken together, mean that no retrospective law which impairs the obligation of contracts, or any other law which impairs their obligation, shall be made.”
In many other cases, a retrospective law is defined to be a law infringing or divesting vested rights. A retrospective statute, affecting or changing vested rights, is generally considered in this country as founded on unconstitutional principles, and consequently inoperative and void. But this doctrine is not understood to apply to remedial statutes, which may be of a retrospective nature, provided they do not impair contracts or disturb absolute vested rights, and only go to confirm rights already existing and in furtherance of the remedy, by curing defects *411 and adding to the means of enforcing existing obligations ; 1 Kent., 455.
We are satisfied with the principle above stated; for there are necessarily cases, almost without number, constantly arising under our system of government, that require the passage of laws in reference to past transactions ; not for the purpose of infringing rights, but to protect them from loss or injury; and we are not aware of any case in which it has been held that a retrospective law, simply because retrospective in terms, is unconstitutional and void; they have been so held, as connected with rights and obligations, where they affect or change vested rights, or impair the obligation of contracts.
It is true, that it has been said, by high authority, that retrospective laws are generally unjust, and neither accord with sound legislation nor the fundamental principles of the social compact; Story on the Const., § 1392. But this cannot, justly, be predicated of such retrospective laws as are sanctioned by our courts. It may be said, that to open the door to the passage of any retrospective laws, is to open it to the passage of all such laws, and to an abuse of legislation on the subject; but this may be said of all legislation on any subject. Our courts are the judges of the powers of the legislature, and are -open to correct the abuses of these powers, and to guard against unconstitutional legislation; and as we must necessarily have retrospective laws, and as many such are wise and proper, it is for the courts to judge, whether rights are divested, or contracts impaired by them, and .so to declare the law.
Now, with this understanding of the meaning of the bill of rights, as above stated, what is the character of the net of 1842, ch. 169, §4? It cannot be denied, that *412 it materially changes the character and effect of the will in question, from what it would have had, if the statute had, not been passed.
Its construction is different from what it would otherwise have been. It could not have passed after-acquired real estate, but now it may. It could not have been available, in the hands of defendant, as evidence of her title to the property in controversy; but now it may be. But this is all that can be said of the act of 1842; and is this sufficient? If this difference of character and effect, produced a like difference or change of vested rights under it and by virtue of it; then, we would say that it comes within the prohibition, and would be inoperative. But is this so? Is any contract impaired, or right infringed or divested? It seems to us, most clearly, that, such is not its effect. The law merely acts upon a paper which does not arise in contract, or vest rights or create obligations. It creates or establishes a new rule of law as to the paper and its subject matter, to the injury of no person whatever. Although as to form, the will was perfect in October, 1830, still it is ambulatory until the death of the testator; it is to be his will at his death, or not, as he may see proper to determine. It vests no rights. It imposes no obligation. It is, virtually, a blank, until the death of the testator. It does not abridge his rights, but rather enlarges them. It enables him to do, what before, he could not do, however strong may have been his wish or intention, and however clear it might have appeared on the face of his will. ¥e think the control of the whole subject of wills, and the transmission of property by will, is under the control of the legislature; and if the act had said that no estate, right, or interest in lands, shall hereafter pass *413 by will, would any of the land of Albert IT. Wynne have passed to the defendant, by virtue of bis will? We cannot conceive upon what principle it would have so done, under our decision on the subject of retrospective laws; and the principle is the same in the case supposed, and in this case; and we think that the act of 1842, ch. 169, § 4, is not in conflict with the 20th section of the bill of rights.
3. But it is insisted that- if the act of 1842 applies to this case, and is not inoperative and void, it does not clearly appear by the will to have been the testator’s intention that his after-acquired real estate should pass thereby.
The testator says, “I give to my much beloved wife, Micha Wynne, all the balance of my property, both real and personal, to have and to hold to her own benefit, to the exclusion of all others.” Now, does it appear by this will, that he intended to give to his wife his after-acquired real estate ? It is not necessary that he should have made an express declaration in so many words, that he so intended. It is sufficient, if, taking the whole will together, such intention clearly or satisfactorily appears. There is a clear intention on the part of the testator, not to die intestate as to any of his property, and an equally clear intent that his wife should have all his estate; and not satisfied with an express declaration to this effect, and to make his intention, if possible, more manifest, he adds, that she is to have it “to the exclusion of all others,” and we think that his intention to give his future as well as his present estate, reasonably and satisfactorily appears by the will. Tie could not have well used stronger language, showing this intent, unless he had declared, in express terms, that all *414 bis estate owned at bis death, should go to his wife. And we are strengthened in our conclusion, by the fact that it has been frequently so held by the supreme court of Massachusetts, upon similar words in a will, under their statute; Cushing vs. Aylwin, 12 Met., 169; Pray vs. Waterson, 12 Met., 262; Fay vs. Fay, 1 Cush., 93; Winchester vs. Foster, 3 Cush., 366.
In 1 Jarman on "Wills, page 285, it is laid down that, under the old law, where a testator made a general gift of his real and personal estate, he was considered as meaning to dispose of these respective portions of his property to the full extent of his capacity; and accordingly such a gift, in regard to real estate, was read as a gift of the property belonging to the testator at the time of the execution of his will, (he being incapable of devising any other,) and as to personalty, as a disposition of what he might happen to possess at the period of his decease.
Thus, we see the reason why a general bequest of personalty was considered as a bequest of all the property of that kind, of which the testator might die possessed. It was so held, because, by such general gift, it was considered that such was the intention, upon the face of the will; and there being no want of power, such intention would be carried out. He was considered as intending to dispose of such property to the full extent of his power. And so, a general devise of real estate, indicated the same intention; but not having' power to devise after-acquired real estate, by a general devise, it would not pass by such clause for that reason, and not because the intention so to devise did not appear by the will. The intention in each case, manifested by a general gift, was the same, and it could be carried out *415 in one case, and in tbe other it could not. But now the statute comes and gives the testator power to devise after-acquired realty; and his intention, as manifested by a general gift, will be carried out.
Erom the view we have taken of the act of 1842, it will not be necessary to decide the questions, as to whether publication and re-publication apply as to holographic wills; or, if they do, whether there can be parol re-publication of such will; and if so, whether there ivas such re-publication in this case. And as the charge of the circuit judge does not materially vary from the view we have taken of the case,' we affirm the judgment of the court below.