MANCE SHERRILL, Clerk, *v.* JOHN B. THOMASON, .Comptroller.

(*Nashville*.    December Term, 1921.)

1. CONSTITUTIONAL LAW.   Constitutionality may be questioned only by one adversely affected.

He who undertakes to question the constitutionality of an act must show that he is adversely affected by it.   (*Post, pp.* 514, 515.)

Acts cited and construed: Acts 1921, ch. 115; Acts 1907, ch. 602; Acts 1909, ch. 586; Acts 1911, ch. 37.

Cases cited and approved: Patton v. Chattanooga, 108 Tenn., 197; Richardson v. Young, 122 Tenn., 522; Kelly v. State, 123 Tenn., 554; Palmer v. Express Co., 129 Tenn., 149; Noell v. Power Co., 130 Tenn., 245; Hyde v. State, 131 Tenn., 215; City of Memphis v. Enloe, 141 Tenn., 618; Pope v. Dykes, 116 Tenn., 230.

Case cited and distinguished: Ogilvie v. Hailey, 141 Tenn., 392.

Constitution cited and construed: Art. 11, sec. 8; Art. 1, sec. 17.

2. CONSTITUTIONAL LAW.   One not adversely affected by tax collection law cannot question its constitutionality.

The constitutionality of a statute for the collection of delinquent taxes cannot be questioned by a taxpayer not in the delinquent class, where the effect of the statute is to reduce rather than increase his tax burdens, as he is not adversely affected by it. (*Post, pp.* 515, 516.)

3. CONSTITUTIONAL LAW.   Officers.   Legislature may abolish fees, but not deprive officers of fees earned.

The legislature may abolish, diminish, or enlarge fees for services not yet performed by an officer, but not fees for services actually performed by an officer, since, as to the latter, the right of the officer to the fees has become vested.   (*Post, p.* 516.)

4. **CLERKS OF COURTS.** Constitutional law. Tax collection statute does not deprive clerk of fees actually earned in delinquent tax cases.

In view of Shannon's Code, section 61, providing that the repeal of a statute does not affect accrued rights, the Delinquent Tax Law, although repealing prior acts, is not unconstitutional as depriving clerks of circuit court of fees actually earned by them as clerk in the delinquent tax cases pending at its passage, although it applies to all delinquent realty taxes to collect which bills may be filed by the State revenue agent, which would include suits instituted to collect taxes growing out of the sale of realty for taxes as shown by the tax records on file at the time of its passage in the offices of the State circuit court clerks. (*Post, pp.* 516-519.)

Cases cited and approved: Richardson v. State, 43 Tenn., 124; Hill v. State, 73 Tenn., 730; State v. Bank, 84 Tenn., 118.

Cases cited and distinguished: Wallace v. Goodlett, 104 Tenn., 670; People v. McNulty, 93 Cal., 437.

5. **TAXATION.** Delinquent Tax Law does not affect pending suits.

The Delinquent Tax Law does not undertake to oust circuit courts of their jurisdiction in tax cases pending at the time of its passage in those courts where realty has been sold for delinquent taxes under prior laws, by transferring such cases from the circuit court to the chancery court, but merely provides an additional remedy to the State for the collection of such taxes, and comes under the rule that statutes relating to remedies alone, and which do not impair the obligation of contracts, or affect vested rights, but provide a new or additional remedy for the enforcement of such rights, are not unconstitutional and void. (*Post, pp.* 519, 520.)

Cases cited and approved: Hope v. Johnson, 10 Tenn., 125; Brandon v. Green, 26 Tenn., 130; Gardenhire v. McCombs, 33 Tenn., 86; McAdoo v. Smith, 64 Tenn., 695; Collins v. Railroad Co., 56 Tenn., 841; Shields v. Land Co., 94 Tenn., 148.

6. **CONSTITUTIONAL LAW.** Delinquent Tax Law not unconstitutional as retrospective.

Sherrill v. Thomason.

The Delinquent Tax Law is not retrospective within Constitution, article 1, section 20, as it merely gives an additional remedy for the collection of delinquent taxes due at the time of its passage. (*Post, p.* 520.)

Acts cited and construed: Acts 1907, ch. 602.

Constitution cited and construed: Art. 1, sec. 20.

7. **TAXATION.**   Remedies for collection of delinquent taxes are under legislative control.

Remedies by which delinquent taxes are to be collected are under the control of the legislature, and it may modify an existing remedy, or may abolish such remedy altogether and substitute therefor a new one, or may add a cumulative remedy for the enforcement of the right of the State in such matters. (*Post, pp.* 520, 521.)

8. **TAXATION.**   Delinquent Tax Law held constitutional.

The Delinquent Tax Law *held* constitutional. (*Post, p.* 521.)

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.— Hon. Jas. B. Newman, Chancellor.

Joe V. Williams, for appellant.

Frank M. Thomson, Attorney-General, for appellee.

Mr. Justice Hall delivered the opinion of the Court.

The bill in this cause challenges the constitutionality of chapter 115 of the Public Acts of 1921, known as the Delinquent Tax Law. The title of this act reads as follows:

"An act to amend an act entitled 'An act to provide more just and equitable laws for the assessment and collection of revenue for State, county and municipal purposes,

and to repeal all laws in conflict with the provisions of this act whereby revenue is collected from the assessment of real estate, personal property, privileges and polls, the same being chapter 602 of the Acts of 1907,' and to repeal an act entitled 'An act to amend an act entitled An act to provide more just and equitable laws for the assessment and collection of revenue for State, county and municipal purposes, and to repeal all laws in conflict with the provisions of this act whereby revenue is collected from the assessment of real estate, personal property, privileges and polls, the same being chapter 602 of the Acts of 1907 of the General Assembly of Tennessee,' the same being chapter 586 of the Acts of 1909 of the General Assembly of Tennessee, and to repeal an act entitled 'A bill to be entitled an act to provide a more effective method for the collection of delinquent taxes,' the same being chapter 37 of the Acts of 1911 of the General Assembly of Tennessee."

Section 1 reads: "That chapter 602 of the Acts of 1907 of the General Assembly of Tennessee, known as the General Assessment Act, be, and the same is hereby amended as follows, to-wit: That after the first day of May, each year, the county trustee shall advertise that a list of all real estate upon which taxes remain due and unpaid will be turned over to the Comptroller of the Treasury, and that additional penalties will accrue if said taxes are not paid on or before the first day in June next. Said additional penalties shall be five per cent. of the gross amount of taxes, interest and penalties due on date of payment which per cent. shall be a charge and lien against the delinquent real estate after the first day of June, and which shall be collected by the trustee from said delinquent and pro-

rated between the State and county as a part of the public revenue, except as otherwise provided in section 2 of this act. Said advertisement shall be substantially in the following form:

"Delinquent taxpayers take notice: On the first Monday in June next, I will turn over to the Comptroller of the Treasury a list of all delinquent real estate taxes as shown by the records in my office, and on said day, under the law, an additional penalty of five per cent. will accrue on the gross amount of taxes, interest and penalties now provided by law. The following is a list of such delinquents, the district in which the property is situated, and the number of acres in each tract as follows: (Here insert list of delinquents.) Such notice shall be inserted once a week for three consecutive weeks in some newspaper published in the county, and if none be published, then by posting said notice at the courthouse door for three weeks previous to such delivery of lists the fee therefor to be paid by the county."

Section 2 provides: "That on the first Monday in June the trustee of the respective counties shall file in the office of the comptroller of the State a certified list of all the delinquent real estate taxpayers showing the amount due, including interest and penalty, from whom due and a description of the property and upon the filing of said list in the office of the comptroller it shall be his duty, through the revenue agents to within six months from the filing of said lists in said office to give notice to the delinquent taxpayers that if said taxes are not paid by the first Monday of the following January that bills will be filed to enforce the lien for taxes assessed against said property, and that an additional penalty of ten per cent. will accrue

upon the filing of said bill. During the six months from June until January the revenue agents shall notify the delinquent and use every effort to collect said taxes, interest and penalties.

"Said notice and advertisement shall be substantially as follows:

" 'Delinquent taxpayers will take notice:

" 'Unless the delinquent real estate taxes are paid on or before January 1st, next, a bill will be filed for the purpose of enforcing the lien for taxes against said property, and an additional penalty of ten per cent. will accrue and be charged against the delinquent taxpayers. Said taxes, interest and penalties should be paid to the trustee of the county.

" 'STATE REVENUE AGENT.'

"When said taxes, interest and penalties are paid to said trustee it shall be his duty to enter the same on the books in his office and to notify the comptroller, whose duty it shall be to mark the same paid on the certified lists in his office.

"All taxes levied on real estate shall remain a lien on the property assessed until the same are paid in full. In the event said taxes, interest and penalties are not paid on or before the first Monday in the following January, it shall be the duty of the comptroller, through the revenue agent, to file bills in the chancery court for the purpose of enforcing the lien for taxes. Said bill shall be filed in the name of the State for itself and for the use of the county, municipality, or taxing district wherein the property is situated, and shall be to recover all delinquent taxes and penalties due thereon, whether the same be State, county or municipal and said bills shall be in substance and in

form the same as other bills filed in the chancery court, and shall show by proper averments and exhibits the name of the party or parties to whom the property was assessed for the year or years for which the taxes claimed are delinquent and shall show the respective interest of the parties. State, the county and the municipality in said taxes, together with all such costs, fees, penalties and interest as have already accrued thereon.

"Said bill shall be filed by the revenue agent, or his attorney, which shall be deemed proper and sufficient authority for the filing of same in said courts, and no bond shall be required on the filing of the same.

"Said suit shall be conducted in accordance with the practice in courts of chancery in this State, except that no copy of the bill shall be issued by the clerk except to a defendant demanding such copy and paying therefor; and in such suit there may be included as many as twenty-five distinct pieces or tracts of land, the owners thereof being made defendants to the bill, and such suit shall not be subject to objection for misjoinder by reason of the distinct interest which the several defendants have in the property proceeded against, and the court is authorized and empowered, if such relief is warranted by the law and the facts, to enforce the lien for taxes by sale of the property upon a credit of not less than six months and in bar of the equity of redemption; and the purchaser at such sale after complying therewith and paying all the purchase money shall be entitled to a decree vesting the title in him absolutely against the owner and against all liens for taxes of any nature whatever, which could have been presented in the cause. If any other suits for delinquent taxes are pending against any particular piece of property, such suits

shall be consolidated with the suit brought under the provisions of this act, and to the end that all of the taxes for which any given piece of property is liable may be included in the final decree.

"A reference may be taken in each case, and notice shall be given to all officers whose duty it is to collect delinquent revenue; and all such revenue as may be delinquent, together with all the costs, fees, penalties and interest thereon, shall be ascertained and included in the master's report.

"And in all cases the courts in which such bills may be filed are authorized to appoint receivers to take charge of the property which is the subject-matter of the litigation and collect the rents and profits thereon, to the end that the net amount of such rents and profits after paying the receiver reasonable compensation shall be applied to the taxes, costs, penalties and interest involved in such suits and incident thereto.

"Any party to a suit brought under the provisions of this act shall have the right to appeal to the supreme court, or have said cause reviewed by writ of error, but an appeal or writ of error by one defendant shall not affect the suits as to other defendants. Provided, however, that no appeal in the nature of a writ of error or writ of errors shall be allowed except from or to a final decree.

"In case of sale the clerk of the court shall bid on behalf of the State the full amount of all taxes due on the property sold, together with the amount of costs, penalties and fees accruing against said property at the time of sale, provided in proper cases the court may order a resale.

"The money derived from a sale of property under the provisions of this Act shall be applied as follows:

Sherrill v. Thomason.

"1. To the payment of the costs of the suit, including the fifteen per cent. penalty to the revenue agent on the gross amount of taxes, interest and penalties due State, county and municipality, which said fifteen per cent. shall be taxed as a part of the costs of the cause and paid by the delinquent, and which shall go to the revenue agent as compensation, and which shall be additional compensation to him other than his salary provided for in section 77 of chapter 602 of the Act of 1907.

"2. To the payment of the State tax and interest thereon; to the county tax and interest thereon; to the municipal tax and interest thereon, in the order named.

"3. To the payment of penalties due on State tax; to the payment of the penalties due on the county tax; to the payment of penalties due on the municipal tax, in the order named.

"4. The remainder, if any, shall be paid to the owner or owners of the land thus sold. The fifteen per cent. penalty herein provided for, shall accrue and be a charge and lien against the real estate upon which the taxes are delinquent from the filing of the bill, and shall be the only fee or compensation paid to the revenue agent, or any attorney conducting the cause, and the proceeds of sale due the State, shall be paid by the clerk and master of the chancery court into the treasury of the State, as other taxes are paid; and that part due the county and municipality to the proper officials charged with the duty of collecting county or municipal revenue. The clerk taking duplicate receipts therefor, and for the handling of said funds the clerk shall have the same compensation as now provided by law for handling and disbursing funds in a court of chancery, and the penalty of fifteen per cent. shall be paid

to the revenue agent; and from time to time, said clerk shall certify to the trustee the payment of taxes, State, county or municipal, and such payment shall be duly noted by said trustee upon the proper record showing the delinquency of said taxes, and the trustee shall notify monthly the comptroller who shall make notation of the payment of said taxes upon the list in his office.

"5. 'The five per cent, penalty herein provided for against delinquents after the same is turned over to the comptroller and before bills are filed, shall be paid to the trustee by the delinquent paying the tax, and the trustee shall prorate the same between the State and county as a part of the public revenue.

"The comptroller, through the revenue agent, is hereby authorized and empowered to settle and compromise any claims or liens for real estate taxes growing out of the sale of real estate for taxes as shown by the tax records now on file in the offices of the circuit court clerks; provided, no compromise shall be made without the approval of the county judge; and provided, further, that the State and county receive the full amount of the taxes and interest due; and the revenue agents shall take steps at once to collect said taxes, and shall have full and free access to the tax books now in the hands of the circuit court clerk for said purpose. It shall be the duty of the revenue agents to at once notify all delinquents to pay said taxes, interest and penalties. Said taxes, interest and penalties shall be paid to the clerks of the circuit court, who shall be entitled to a fee of five per cent. for collecting and disbursing said funds, as now provided to be taxed against the delinquent, and the revenue agent shall be entitled to a

commission of ten per cent., to be paid out of the funds collected. In the event any of these claims are not paid by the first Monday in January, 1922, suits shall be instituted to collect the delinquent taxes under the provisions of this act. It shall be the duty of the trustees of the various counties to keep an accurate account of all the taxes, interests and penalties collected, and the disposition of the same."

Section 3 reads: "That sections 51, 52, 53, 54, 55, 56, 58, 59, 60, 61, and 62 of said chapter 602 of the Acts of 1907 be, and the same are hereby stricken out."

Section 4 is as follows: "That chapter 586 of the Public Acts of the General Assembly of the State of Tennessee for 1909, being an act entitled 'An act to amend chapter 602, Acts of 1907, entitled "An act to provide more just and equitable laws for the assessment and collection of revenue for State, county and municipal purposes; and to repeal all laws in conflict with the provisions of this act whereby revenue is collected from the assessment of real estate, personal property, privileges and polls," so as to provide for the settlement of delinquent taxes' be, and the same is, hereby repealed."

Section 5 is as follows: "That chapter 37, of the Public Acts of the General Assembly of the State of Tennessee for 1911, being an act entitled 'A bill to be entitled an act to provide a more effective method for the collection of delinquent taxes,' be and the same is hereby repealed."

Section 6 is as follows: "That this act take effect from and after its passage, the public welfare requiring it."

The sections of chapter 602 of the Acts of 1907, which are stricken out of said act by section 3 of the act of 1921, all relate alone to the sale of real estate for the collection

of delinquent taxes, and need not be set out in this opinion.

The bill was dismissed by the chancellor on the demurrer of the defendant, and complainant has appealed and has assigned errors.

The bill was filed by complainant in his individual capacity as a taxpayer of Hamilton county, and also as clerk of the circuit court of said county, against the defendant Thomason, as State comptroller, to enjoin the enforcement of said act on the following grounds:

1. The bill alleged that, under the law as it existed prior to the passage of chapter 115 of the Public Acts of 1921, all real estate on which delinquent taxes may accrue for any year after June 1st of said year shall, after proper advertisement, be sold by the county trustee, and where no one appears to purchase the same it shall be struck off to the State treasurer, and that a list of such property so struck off to the State treasurer shall be made up and certified by the trustee of the county and filed in the office of the circuit court clerk, who is charged with the duty of collecting the same.

That the challenged Act of 1921 radically changed this method of collecting delinquent taxes on realty; and, among other provisions, it is provided therein that all suits pending in the circuit court where taxes are not paid by January 1, 1922, the State revenue agent is authorized to file suits in the chancery court to collect such taxes, costs, and penalties.

That, among other things, the act of 1921 seeks to change the jurisdiction of several hundred suits now pending in the circuit court of Hamilton county by transferring them to the chancery court of said county, and that complainant, as circuit court clerk of said county, having earned

several thousand dollars of fees in these suits, has a vested right in these fees, which the act of 1921 undertakes to deprive him of by the transfer of said suits from the circuit court to the chancery court and for this reason said act violates section 8 of article 11 of the State Constitution, which prohibits class legislation; that it also violates section 17 of article 1 of said Constitution, which provides that all courts shall be open; and every man for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay; section 1 of article 2, which provides that "the powers of government shall be divided into three distinct departments; the legislative, executive and judicial" and section 2, which provides that— "No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted."

2.   That the title of the act of 1921 is amendatory and is purely prospective, while the latter part of the body of the act, which undertakes to deal with tax suits already pending in the circuit court, and transfer these cases to the chancery court, is retrospective, and contravenes section 17 of article 2 of our Constitution, which provides that— "No bill shall become a law which embraces more than one subject, that subject to be expressed in the title."

3.   That the State comptroller and the State revenue agents are preparing to collect delinquent realty taxes in accordance with the provisions of the act of 1921, and that, acting under their instructions, the county trustee of Hamilton county has indicated his purpose to proceed under said act, which will result in the several hundred de-

linquent tax suits pending in complainant's court, in which he has earned fees, commissions, etc., to the extent of several thousand dollars, being transferred to the chancery court, and if these suits are transferred to the chancery court and the circuit court is deprived of its jurisdiction, the only compensation which complainant would be entitled to receive in any of these cases would be the five per cent. commission provided in the latter part of section 2 of said act; that the effort, therefore, to cut the complainant off from collecting his earned fees and commissions in said suits is contrary to and violative of section 61 of Shannon's Code, which reads as follows:

"The repeal of a statute does not affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced, under and by virtue of the statute repealed."

4. That the act of 1921 takes away the right of redemption in all sales for delinquent taxes on real estate, which right was recognized by the law which it undertakes to amend, and in the many suits pending in the circuit court the owners and their privies of the lands sold in said suits have the unquestionable right of redemption, and therefore the effort to cut off this right of redemption affects, not only the owners of the property and their privies, but also the complainant as clerk, because he has vested rights in the fees earned in said suits; and the effort to transfer these suits from the circuit court to the chancery court would, if successful, cut off the right of redemption, and thereby affect complainant, and said act is void for that reason.

5. That the act of 1921, if valid, cannot apply to delinquent realty taxes for the year of 1921, for the reason that

said act only became effective April 1, 1921, whereas the taxes for said year were assessable on January 10, 1921.

6. That in section 2 of the act of 1921 it is provided that the revenue agent shall receive a fifteen per cent. penalty on the gross amount of taxes, interest, and penalties collected, and is therefore violative of section 16 of article 1 of our Constitution, which provides that no excessive fines or penalties shall be imposed; it being alleged in the bill that to allow the revenue agent fifteen per cent. of the gross amount of taxes, interest, and other penalties amounts to compounding penalties, and is excessive and oppressive.

7. That said act violates section 28 of article 2 of the Constitution, which provides that taxes shall be equal and uniform throughout the State, because a delinquent realty taxpayer, under its provisions, is required to pay more than a delinquent personalty taxpayer is required to pay for the same year.

While the demurrer of defendant set forth a number of grounds why the bill should be dismissed, the chancellor only passed on and sustained grounds 2 and 3 of said demurrer. These grounds are as follows:

"(2) The allegations of the bill fail to state a cause of action against defendant.

"(3) Because the bill shows that said chapter 115 of the Public Acts of 1921 is not void or obnoxious to any one or all of the articles and sections of the Constitution of the State of Tennessee referred to therein for any one or all of the reasons stated in said bill."

The action of the chancellor in sustaining these grounds of the demurrer and in dismissing his bill is assigned by the complainant as error.

145 Tenn.—33

The act challenged was approved April 9, 1921, and undertakes to amend chapter 602, Public Acts of 1907, known as the General Assessment Act, and to repeal chapter 586, Acts of 1909, and chapter 37, Acts of 1911. The act amended, as well as those repealed, relate to the collection of delinquent taxes on real estate.

The rule is well established in this State that he who undertakes to challenge the constitutionality of an act must show that he is adversely affected by it. *Patton* v. *Chattanooga,* 108 Tenn., 197, 65 S. W., 414; *Richardson* v. *Young,* 122 Tenn., 522, 125 S. W., 664; *Kelly* v. *State,* 123 Tenn., 554, 132 S. W., 193; *Palmer* v. *Express Co.,* 129 Tenn., 149, 165 S. W., 326; *Noell* v. *Power Co.,* 130 Tenn., 245, 169 S. W., 1169; *Hyde* v. *State,* 131 Tenn., 215, 174 S. W., 1127; *City of Memphis* v. *Enloe,* 141 Tenn., 618, 214 S. W., 71.

With reference to the practice of dismissing a bill on grounds of a demurrer that are general rather than passing upon the special grounds thereof, this court, in *Ogilvie et al.* v. *Hailey, Clerk,* 141 Tenn., 392, 210 S. W., 645, said:

"Where a bill is bottomed on the unconstitutionality of a statute, it is the duty of the complainant to point out and state with particularity the details of the supposed conflict of the statute with the organic law. In such case a demurrer which challenges generally the legal conclusions of the bill is sufficient."

While the bill in the suit at bar alleges that complainant is a taxpayer of Hamilton county, it does not allege that he is in the delinquent class, or that he, as such taxpayer, would in any way be affected adversely by the operation of said act, and cannot therefore challenge said act

in his capacity as a taxpayer under the rule announced by the authorities above cited.

The rule is well established in this State that a taxpayer for himself and other taxpayers can maintain a bill to prevent the commission of an unlawful act, the effect of which would be to increase his burden of taxation, or to divert a public fund from the purpose for which it was intended by law. In cases like this the taxpayers have such a special interest in the subject-matter as will authorize them to maintain such an action. *Pope* v. *Dykes,* 116 Tenn., 230, 93 S. W., 85, and the cases there cited.

This rule has never been extended, however, to the collection of delinquent revenue where the taxpayer complaining was not in the delinquent class, and the effect of the act assailed was to reduce, rather than increase, his tax burdens; nor to a case where delinquent revenue is collected, and all the costs and penalties incident to said collection are paid by the delinquent. In the latter case the State receives all the revenue to which it is entitled without the least impairment or diversion, and without prejudice to the taxpayer. Complainant cannot therefore challenge said act in his capacity as a taxpayer upon the ground that it violates the uniform taxation clause of the Constitution, or upon the ground that it violates the provision of the Constitution with respect of excessive fines or penalties, or any other ground upon which a delinquent taxpayer only could complain.

It is next insisted by complainant that he has, as clerk of the circuit court of Hamilton county, performed services, under the laws amended and repealed by the act of 1921, which give him certain fixed and vested rights that are destroyed by the act of 1921 in violation of section 20

of article 1 of the Constitution, which provides "that no retrospective law, or law impairing the obligations of contracts shall be made."

The rule is well settled that, in the absence of constitutional inhibition, the legislature can abolish an office, and when this is done the rights and duties of the officer holding the office cease. It may abolish, diminish, or enlarge fees allowed as compensation for duties imposed, but not performed, because the officer's right to such fees has not been acquired or fixed by any contract, either express or implied. The rule, however, is different as to fees for services actually performed by the officer during his tenure of office. As to the latter, the right of the officer to the fees have become vested, and cannot be destroyed, while the former is under the control of the legislature and may be dealt with by that body in such manner as it deems proper.

We are of the opinion that there is nothing in the act of 1921 which deprives complainant of the fees actually earned by him as clerk in the delinquent tax cases now pending in the circuit court of Hamilton county under the statutes amended and repealed, but as to fees which have not been earned, but are contingent, he is not protected. In other words, he is not protected in fees which have not been earned, for the reason that the services for which said fees are allowed under the acts amended and repealed have not been performed, and therefore complainant has no vested right in them.

The concluding paragraph of section 2 of the act of 1921 authorizes the comptroller, through the revenue agent, to institute suits in the chancery court to collect delinquent taxes shown on the tax records on file in the office of the

circuit court clerk when they are not paid by the first Monday in January, 1922.

Section 2 of said act provides as follows:

"Said bill shall be filed in the name of the State for itself and for the use of the county, municipality, or taxing district wherein the property is situated, and shall be to recover all delinquent taxes and penalties due· thereon, whether the same be State, county or municipal and said bills shall be in substance and in form the same as other bills filed in the chancery court, and shall show by proper averments and ·exhibits the name of the party or parties to whom the property was assessed for the year or years for which the taxes claimed are delinquent and shall show the respective interest of the parties.  State, the county and the municipality in said taxes, together with all such costs, fees, penalties and interest as have already accrued thereon."

Said section further provides as follows: "A reference may be taken in each case, and notice shall be given to all officers whose duty it is to collect delinquent revenue; and all such revenue as may be delinquent, together with all the costs, fees, penalties and interest thereon, shall be ascertained and included in the master's report."

It is insisted by complainant that the foregoing provisions only apply to taxes which become delinquent after the passage of the act of 1921, and not to delinquent taxes accruing prior to the passage of said act, and for which the property has been sold and struck off to the State treasurer and a list of such property certified to and filed in the office of the circuit court clerk.

We think the act applies to all delinquent realty taxes, to collect which bills may be filed by the State revenue

agent. This would include suits instituted to collect taxes growing out of the sale of real estate for taxes as shown by the tax records now on file in the offices of the circuit court clerks of the State. We think, when the act is considered as a whole, it is not susceptible to the construction that it in any way undertakes to interfere with the fees actually earned by circuit court clerks in such cases. Indeed, there is no language in the act which shows any such intention. The act of 1921 expressly provides that, where the taxes that are shown by the tax records on file in the clerk's office are collected by the revenue agent without suit, the payments are to be made to the clerk, and fees which have been actually earned by him are not affected, but are collectable by him at the time the taxes and other fees are paid.

But if it be conceded that said act does not specifically protect the fees actually earned by circuit court clerks in sales of record in their offices, then undoubtedly section 61 of Shannon's Annotated Code does do so. This section of said Code is not repealed or in any way affected by the act of 1921, nor is it suspended by implication. This statute is in the following language:

"The repeal of a statute does not affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced, under or by virtue of the statute repealed."

The object and intention of the legislature in passing section 61 was to provide by general law against the rule of the common law that when suits have been commenced the repeal of the statute defeats the jurisdiction of the courts where rights had vested, and costs had been incurred, etc. *Richardson* v. *State,* 3 Cold., 124; *Hill* v. *State,* 5

Lea, 730; *State* v. *Bank,* 16 Lea, 118; *Wallace* v. *Good-lett,* 104 Tenn., 670, 58 S. W., 343.

In *Wallace* v. *Goodlett,* supra, this court said: "Section 49 of the Code (61 of Shannon's Code) is very plain, unambiguous, broad, and general, and makes no exception whatever."

In *People* v. *McNulty,* 93 Cal., 437, 26 Pac., 597, 29 Pac., 61, which case is cited with approval by the court in *Wallace* v. *Goodlett,* supra, it is said:

"It is quite clear that a general saving clause, if it be  .  .  . in apt language to express the purpose, is as efficient as a special clause expressly inserted in a particular statute. This proposition is too plain to need the support of authority; but there are authorities directly to the point."

It is said that the act of 1921 undertakes to oust the circuit courts of their jurisdiction in tax cases now pending in those courts where real property has been sold for delinquent taxes under the laws amended and repealed by said act of 1921, by transferring said cases from the circuit court to the chancery court.

We do not think such is the effect of the act of 1921. In the first place, the record of tax sales in the circuit court which have been duly certified by the county trustee to that court under chapter 602 of the Acts of 1907, are not in a strict sense suits between parties, but are simply summary proceedings provided by the legislature against delinquent taxpayers; but if they may properly be called suits, there is no provision in the act of 1921 providing that such suits shall be transferred from the circuit court to the chancery court for adjudication. The act of 1921 merely provides an additional remedy to the State for the

collection of such taxes. It does not undertake to transfer any such case to the chancery court. Statutes relating to remedies alone, and which do not impair the obligation of contracts, or affect vested rights, but which provide a new or additional remedy for the enforcement of such rights, are not unconstitutional and void. *Hope* v. *Johnson*, 2 Yerg., 125; *Brandon* v. *Green*, 7 Humph., 130; *Gardenhire* v. *McCombs*, 1 Sneed, 86; *McAdoo* v. *Smith*, 5 Baxt., 695; *Collins* v. *Railroad Co.*, 9 Heisk., 841; *Shields* v. *Land Co.*, 94 Tenn., 148, 28 S. W., 668, 26 L. R. A., 509, 45 Am. St. Rep., 700.

It is also said that the title of the challenged act is prospective, while the body of the act is retrospective, and is therefore in conflict with section 20 of article 1 of the Constitution.

We do not think this contention can be sustained. The amended act (chapter 602, Acts of 1907) provided a certain remedy for the collection of delinquent taxes on real property assessed under that act, which manifestly was germane to the title of said act. The challenged act merely substitutes an additional remedy for the collection of delinquent taxes shown to be due by the tax records on file in the office of the circuit court clerk, and of this complainant cannot complain because he has no vested right in any particular remedy, either as circuit court clerk or as an individual.

Remedies by which delinquent taxes are to be collected are under the control of the legislature. It may modify an existing remedy, or may abolish such remedy altogether and substitute therefor a new one, or may add a cumulative remedy for the enforcement of the right of the state in such matters. *Collins* v. *Railroad Company*, supra.

The simple fact that the act of 1921 provides for the institution of suits by the comptroller through the State revenue agents for the collection of delinquent taxes on file in the circuit court clerk's office does not render said act retrospective. Under the act amended (chapter 602, Acts of 1907) if no person bid for the property sold, it was the duty of the trustee to bid it off in the name of the State treasurer for the State, and the State was still without remedy to collect said taxes. The amendatory act of 1921 merely gives the State an additional and new remedy by which it may realize revenue which would otherwise be lost.

We are of the opinion that none of the constitutional objections made by complainant to the act of 1921 are well taken, and that the chancellor was not in error in sustaining the defendant's demurrer and dismissing complainant's bill, and his decree will be affirmed.