May Hill ANDERSON et al., Appellees,

v.

MEMPHIS HOUSING AUTHORITY and City of Memphis, Appellants.

Court of Appeals of Tennessee,
Western Section.

Oct. 14, 1975.

Certiorari Denied by Supreme Court
Feb. 23, 1976.

Melvin Fleischer and Bernie Mullikin, Jr., Memphis, for appellant Memphis Housing Authority.

Arthur J. Shea, Memphis, for appellant City of Memphis.

Newton P. Allen, Memphis, for appellees.

NEARN, Judge.

This appeal is by the Memphis Housing Authority and the City of Memphis, hereinafter Authority, from the order of the Trial Judge in an inverse condemnation matter. The appeal is somewhat unusual because neither side to the controversy makes any complaint about the amount of compensation awarded to the plaintiff-owners by the jury. The complaint to this Court is made up of two Assignments of Error which are directed to the application of T.C.A. § 23–1423 as amended in 1972 to the case.

On appeal, the facts are not in dispute and a stipulation has been filed with the Court.

The landowners are owners of certain real property located on Madison Avenue in the City of Memphis. In 1970 the Authority completed the construction of an overpass at the intersection of what is now known as Madison Avenue and Danny Thomas Boulevard. The construction of the overpass required the construction of a partial "new" Madison Avenue to traverse the overpass. The owners charged that such construction necessarily changed the grade of Madison Avenue in order to go over Danny Thomas Boulevard. Without going into further detail, it is sufficient to say that the jury found the changes brought about by construction adversely affected and partially destroyed ingress and egress and obstructed and impaired the easement of light, air, and view of the owners. No land of the owners was taken by the Authority and no condemnation proceedings were instituted by it.

The construction work was completed about April, 1970, and the owners, pursuant to T.C.A. § 23–1423 as it then existed,[1] filed

---

1. Prior to the 1972 Amendment the statute was as follows: "23–1423. Action initiated by owner.—If, however, such person or company has actually take [sic] possession of such land, occupying it for the purposes of internal improvement, the owner of such land may petition for a jury of inquest, in which case the same proceedings may be

their inverse condemnation suit on June 4, 1970. The cause came on to be heard in June, 1974, and at the conclusion of the owners' proof a verdict was directed for defendant. A motion for a new trial was granted and the matter came on for another hearing which second hearing resulted in a jury verdict of $12,000 for the value of the rights taken or damaged. After the jury made its award, on request of the owners and upon the authority of T.C.A. § 23–1423 as amended by Chapter 463, Section 3 of the Public Acts of the State of Tennessee of 1972,[2] the Trial Judge awarded the owners an additional sum of $7,014.58; of which sum the amount of $5,003.33 represented attorney fees incurred by the owners in the prosecution of their claim and the balance of $2,011.25 represented actual expenses incurred by the owner including $1,410 expert witness fees and $601.25 as court reporter fees for depositions, attendance at both trials and miscellaneous items. The Court also awarded the appointed guardian ad litem for services rendered a fee in the amount of $1,500 to be charged one-half against the Authority and one-half against the owners.

The Assignments of Error may be stated as follows:

### I.

The trial Judge erred in applying T.C.A. § 23–1423 as amended by the 1972 Legislature as the application of the 1972 Amendment to this case would be a retrospective application of the statute and therefore unconstitutional.

### II.

The Trial Judge erred in charging any portion of the guardian ad litem fee to the Authority as the appointment of a guardian ad litem was unnecessary and not required by law.

The fact that a statute is retrospective in application does not automatically render it unconstitutional and void. It is when a statute creates a new right or takes away a vested right or impairs contractual obligations that its retrospective application is constitutionally forbidden. Tenn.Const. Art. 1, § 20; *Wynne's Lessee v. Wynne* (1852) 32 Tenn. 405. If the statute does none of the foregoing, but is only procedurally remedial in nature, retrospective application is constitutionally permissible. *Wynne's Lessee; Cavender v. Hewitt* (1921) 145 Tenn. 471, 239 S.W. 767, 22 A.L.R. 755; *Dowlen v. Fitch* (1954) 196 Tenn. 206, 264 S.W.2d 824; *Sherrill v. Thomason* (1921) 145 Tenn. 499, 238 S.W. 876. In point of fact, the retrospective application of remedial statutes is not only constitutionally permissible, but such statutes are generally to be construed in favor of retrospective application when possible. *Dowlen v. Fitch.*

Since the Amendment in question did not come into being until after suit was filed, there can be no doubt that it has been retrospectively applied.

Therefore, whether or not the Trial Judge was correct in his retrospective application of the 1972 Amendment depends upon whether or not the statute is remedial in nature. We hold that it is not remedial

---

had, as near as may be, as hereinbefore provided; or he may sue for damages in the ordinary way, in which case the jury shall lay off the land by metes and bounds and assess the damages, as upon the trial of an appeal from the return of a jury of inquest."

2. The 1972 Amendment was the addition of the following paragraph: "Additionally, the court rendering a judgment for the plaintiff in a proceeding brought under paragraph one of this section, arising out of a cause of action identical to a cause of action that can be brought against the United States under section 1346(a)(2) or 1491 of Title 28, United

States Code, or the attorney general or chief legal officer of a political subdivision of the state effecting a settlement of any such proceeding, shall determine and award or allow to such plaintiff, as a part of such judgment or settlement such sum as will in the opinion of the court, or the attorney general or chief legal officer of a political subdivision of the state reimburse such plaintiff for his reasonable costs, disbursements and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding."

in nature and therefore, not permissibly retrospective in its application.[3]

The damage to the owners for the "taking" occurred in 1970. At that time the owners filed their suit. At that time the Authority was answerable in damages and the owners were entitled to recover in damages the value of the land or right taken, no more and no less. All the citizens of this State were entitled to the same compensation, that is, the value of their land or right taken or damaged, no matter whether the action was commenced by a condemning authority or by the land owner. The 1972 Amendment clearly allows the owner in an inverse condemnation matter recovery for greater and a new and different measure of damages than was previously allowed, viz., attorney fees etc.

In both the *Dowlen* and *Wynne's Lessee* cases, supra, the Court held that statutes which create new or take away vested rights and obligations cannot be retrospectively applied.

In the case of *School Commissioners v. State* (1846) 26 Tenn. 113, the statute under consideration by the Court directed a different rule of damages than permissible when the liability arose. The Supreme Court held that the statute could not retrospectively be applied. We believe the case to be in point.

We hold the Amendment in question is one that does not merely enlarge or affect a procedure for the enforcement of an existing right, but on the contrary, creates a new right of recovery theretofore nonexistent.

Therefore, we hold the Trial Judge retrospectively applied a non-remedial statute and thereby erred.

The first Assignment of Error is sustained.

A guardian ad litem was appointed by Court order on April 25, 1974, which order bears the approving signature of all counsel as well as the Judge. On May 28, 1974, the guardian ad litem filed a complete report and brief of law. On June 10, 1974, immediately prior to the commencement of the first trial, counsel for the Authority moved the Court to discharge the guardian ad litem arguing that there was no legal basis for his appointment since the suit had been filed by the "next friend" of those under disability. The Court denied the motion and the guardian ad litem remained in the courtroom during the first trial.

On November 15, 1974, when the case again came on to be heard, counsel for the Authority again moved for the discharge of the guardian and the motion was overruled. The guardian remained in the courtroom for three and one-half days of the second trial.

By his second Assignment of Error counsel for the Authority objects to being required to pay one-half of the guardian ad litem fee.

Much of the brief on this point is dedicated to the proposition that the appointment of the guardian ad litem was legally unnecessary. This is countered in appellee's brief with arguments why the appointment was legally necessary. The fact is that the exact legal status of all owners is somewhat difficult to ascertain without painstaking analysis. The interests of minors, non compos mentis, and those not in esse are involved. One of the plaintiffs is a non-resident under disability with a foreign appointed guardian not authorized to bring suit.

The owners of the various interests in the property in question are numerous. The guardian ad litem was appointed for certain of the plaintiffs who were under disability. The suit was brought by the "next friends" of certain of those under disability. It is argued to this Court that the Trial Judge improvidently appointed the guardian ad litem, as such is completely unnecessary

---

**3.** We make no holding regarding the constitutionality of the Amendment per se, as no direct attack is made on the constitutionality of the Amendment.

when the suit is brought by a "next friend" as the "next friend" acts in the capacity of a guardian ad litem. It is further argued that it is only when a *defendant* is found to be under a disability and without a proper guardian that a guardian ad litem is appointed.

In those instances not specifically required by law, the Courts shall appoint a guardian ad litem "whenever justice requires". Rule 17.03 Tennessee Rules of Civil Procedure. "Whenever justice requires" is a phrase denoting some judicial discretion. It should be noted that the "next friends" of those for whom the guardian ad litem was appointed were also party plaintiffs in their own right and who also claimed a share of the same proceeds due from the Authority which are to be divided with their "wards".

We do not hold that the appointment of a guardian ad litem in this case was necessary for a valid decree, but we do hold that under all the circumstances the Trial Judge did not err in appointing the guardian ad litem nor in refusing to discharge him on motion of appellant. He acted within his discretion. A Judge should not be reversed for the appointment of a fiduciary to protect what might be the unprotected rights of those under disability unless there is shown a clear abuse of discretion. Even if later events prove the appointment unnecessary, absent discretionary abuse, there is no reversible error.

No complaint is made as to the amount of the guardian's fee. The complaint is that the Trial Judge erred in requiring the Authority to pay half of it.

We hold that the Trial Judge did not err in his division of the guardian ad litem costs. Again, such matters are in the wide discretion of the Trial Judge and we find no abuse thereof.

The second Assignment of Error is overruled.

The result is that the judgment below is modified and reduced by the sum of $7,014.58 and the cause remanded for enforcement of the judgment.

Costs of appeal are adjudged against the Authority.

CARNEY, P. J., and MATHERNE, J., concur.