IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON
_____

**SUSIANA DIXON, bnf & Niece of**
**MARTHA J. MOSES,**

    Plaintiff-Appellant,

                                     Shelby Chancery #101766-3

Vs.                                C.A. No. 02A01-9504-CH-00069

**JOHNNIE STREET,**

    Defendant,

**FILED**

**August 8, 1996**

**Cecil Crowson, Jr.**
Appellate Court Clerk

**ROBERT C. IRBY,**

    Guardian ad litem-Appellee.

FROM THE CHANCERY COURT OF TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

THE HONORABLE D. J. ALISSANDRATOS, CHANCELLOR

James M. Gulley, R. Linley Richter, Jr.,
Law Offices of Seymour S. Rosenberg, of Memphis
For Appellant

Ronald D. Krelstein of Memphis
For Appellee

*VACATED AND REMANDED*

Opinion filed:

                                **W. FRANK CRAWFORD,**
                                **PRESIDING JUDGE, W.S.**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

      This case involves an award of guardian ad litem fees. Appellant, Martha J. Moses,

conservator of the person of Susiana Dixon, appeals the trial court's order made final pursuant

to Rule 54.02 awarding a money judgment against her in the sum of $3,127.00 in favor of

appellee Robert C. Irby, guardian at litem for Susiana Dixon.

On August 4, 1992, Martha Moses, niece of Susiana Dixon, filed a Petition for Annulment of Marriage and Appointment of Conservator seeking to annul the marriage between Ms. Dixon and Johnnie Street, and to have herself named as Ms. Dixon's conservator. Ms. Moses alleged, *inter alia*, that Ms. Dixon was not competent to enter into a marriage contract, that Mr. Street mistreated Ms. Dixon, and that he coerced her into taking out a second mortgage on her home for his personal benefit. The court appointed Robert C. Irby, a practicing attorney, guardian ad litem for Ms. Dixon. By order entered December 2, 1992, the court appointed Ms. Moses conservator and directed Mr. Irby to continue to act as Ms. Dixon's guardian ad litem. Irby was also authorized to bring any necessary legal action to recover Ms. Dixon's property.

On January 10, 1994, Mr. Irby filed a Petition for Instructions of the Court seeking an accounting from Ms. Moses and direction from the court as to how Ms. Dixon's social security check should be applied. An order was subsequently entered providing that Mr. Irby would receive Ms. Dixon's social security checks, withhold $200.00, and use the balance to pay Ms. Dixon's expenses at Heritage Manor of Memphis, her residence. Despite the existence of this order, Ms. Moses contacted the Social Security Administration five times in an attempt to have Ms. Dixon's check sent directly to her [Ms. Moses]. Ms. Moses never complained to her attorney regarding the quality of Mr. Irby's services as guardian ad litem for Ms. Dixon's estate; however, she contacted the Board of Professional Responsibility (Board) alleging that Mr. Irby had, *inter alia*, improperly received money from Ms. Dixon's estate. These communications were also sent to Chancellor Alissandratos. At the direction of the Chancellor, John Robertson, Clerk and Master, responded to Ms. Moses's letters, directing her not to send additional *ex parte* communications and to communicate with the Chancellor, if necessary, through her attorney.

On June 21, 1994, Mr. Irby filed a Petition for Further Instructions. A hearing took place on June 29, 1994, at which time the court found that Ms. Moses had deliberately frustrated the intentions of the court by interfering with Mr. Irby's actions as Ms. Dixon's guardian. In response to questions concerning the amount of time Mr. Irby expended because of Ms. Moses's interference, the following dialogue took place between Mr. Irby and his attorney:

Q: Would you briefly describe what your life has been like based

2

on the continual assault on your performance of your duties by Mrs. Moses? How many hours would you say you have spent responding to her various complaints to the board?

A: A conservative count at this time -- and I'm including responding to the letters to the Chancellor which were sent to Mr. John Robertson and Mr. Robertson requested my response to her second letter, and I wrote a lengthy response -- total time would be thirty-five to forty hours.

Q: Now, has that helped or hindered you in the administration of this guardianship?

A: Well, it's very much hindered me. I might add, it's more time if I include the time going to Social Security to correct the -- the March check was supposed to come the first week in May, and following the Heritage Manor applying for rep payee status, which I had no notice of until the check did not arrive, so the time I would guess would be forty-five to fifty hours because I had to go to Social Security, personally exhibit orders, et cetera, and I have had to do it more than once.

What it has done to my schedule, it has greatly interfered with my work schedule . . . . Like, for example, yesterday I spent five hours getting ready for this hearing today, so it has been the most inopportune time.

On cross-examination, Mr. Richter, attorney for Ms. Moses, had the following dialogue with Mr. Irby:

Q: Just a few things, Mr. Irby. You have stated that you had

> spent about forty-five or fifty hours going to the Social Security
> office to try and straighten out the check situation; is that correct?
>
> A: No. I said total, straighten out the Social Security check
> situation and responding to your client's letters to Mr. Robertson
> as well as to Nashville, I mean total.

During closing arguments, the court made the following statement:

> I think he said thirty-five to forty hours to deal with your client's
> complaints and then he said plus he had to spend some additional
> time dealing with the Social Security complaints. That's what I
> wrote down.

Based on these statements, the trial court ruled that Ms. Moses had "unreasonably consumed the time of Mr. Irby for forty hours" and awarded Mr. Irby a fee of $3000.00, plus costs of $127.00, for his service as Ms. Dixon's guardian ad litem and rendered judgment against Ms. Moses for this amount. The trial court stated that the fee to Mr. Irby was justified pursuant to both Tenn.R.Civ.P. 17.03 and Tenn.R.Civ.P. 11.

Appellant presents a single issue on appeal which, as stated in appellant's brief, is:

> Whether the trial court erred in rendering judgment against
> Appellant to compensate Appellee for his time spent responding
> to a complaint filed against him with the Board of Professional
> Responsibility.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

It is well established that the trial court has discretion to award costs in a civil case. T.C.A. § 20-12-119 (1994). Fees awarded to a guardian ad litem for his or her services are taxed as costs under Tenn.R.Civ.P. 17.03. Appellee argues that where a guardian ad litem is also an attorney, any time he or she spends responding to the Board may be awarded as costs under Tenn.R.Civ.P. 17.03.

The practice of law is a privilege, not a right. *Cox v. Huddleston*, 914 S.W.2d 501, 505 (Tenn. App. 1995). Any attorney practicing law in the State of Tennessee voluntarily subjects him or her self to the "disciplinary jurisdiction of the Supreme Court, the Board [of Professional Responsibility], the hearing committees . . . and the Circuit and Chancery Court." Rules of the

Supreme Court, Rule 9 § 1.1. Moreover, an attorney's failure to respond to correspondence from the Board results in temporary suspension. Rules of the Supreme Court, Rule 9, § 4.3. We concede the point made by the appellee; that is, that the actions by Mr. Irby that caused Ms. Moses to complain to the Board occurred while he was acting in his capacity as a guardian ad litem, not as an attorney. Moreover, it is clear from the record that the chancellor found that Ms. Moses's actions were unreasonable.

Courts have wide discretion to allow guardians a reasonable fee for their time. Tenn.R.Civ.P. 17.03; *Anderson v. Memphis Housing Authority*, 534 S.W.2d 125, 129 (Tenn. App. 1975). However, because of the competing policy considerations at issue, we hold that an attorney who acts as a guardian must bear the particular burden of responding to the Board of Professional Responsibility without the expectation of receiving any form of compensation, regardless of the fact that the attorney was acting in his or her capacity as a guardian ad litem at the time the complaint arose.

In the case before us, the chancellor awarded a judgment against Ms. Moses for the guardian ad litem fees. Admittedly, some part of this fee was based on the time Mr. Irby spent dealing with Ms. Moses's complaint filed with the Board of Professional Responsibility, which is not compensable. The chancellor stated that the award of fees was proper pursuant to Rules 11 and 17, Tennessee Rules of Civil Procedure, but did not show any division of the award between the two rules. Rule 17.03 provides for guardian ad litem fees to be awarded as part of the costs of the cause, and Rule 11 provides for sanctions against the offending party. We are unable to determine from the record before us what part of the award is costs and what part is sanctions and therefore cannot determine whether the award is proper under these circumstances.

Accordingly, the order of the trial court awarding fees to the appellee is vacated, and the case is remanded to the trial court for further proceedings consistent with this opinion. Costs of the appeal are assessed one-half to Ms. Moses and one-half to Mr. Irby.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**DAVID R. FARMER, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**